1  0

O

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,     )  Case No. [CV 13-08906 DDP]
                                   )  CR 09-00460 DDP ✓
12        Plaintiff-Respondent,    )
                                   )  **ORDER DENYING MOTION FOR RELIEF**
13        v.                       )  **UNDER 28 U.S.C. § 2255**
                                   )
14  VINCENT ANTHONY JONES,         )
                                   )
15        Defendants-Petitioner.   )
    _____ )
16

17       Before the court is Petitioner Vincent Anthony Jones

18  ("Petitioner")'s Motion to Vacate, Set Aside, or Correct Sentence

19  Pursuant to 28 U.S.C. § 2255. Also before the court are two Motions

20  to Amend Original and Timely Filed 28 U.S.C. § 2255 Motion Pursuant

21  to Relief Under Rule 15(c). Having reviewed the materials submitted

22  by the parties and considered the arguments advanced therein, the

23  court adopts the following order.

24  **I.   Background**

25       On May 12, 2009, Petitioner was indicted for four counts of

26  bank robbery and one count of attempted bank robbery, all in

27  violation of 18 U.S.C. § 2113(a).

28  ///

**A.   Guilty Plea**

Petitioner initially pled not guilty to all counts of the indictment. (Dkt. No. 13.) However, on May 6, 2010, after several days of trial, Petitioner changed his plea to guilty on count five, bank robbery in a violation of 18 U.S.C. § 2113(a). (CR Dkt. No. 147.) In entering a guilty plea, Petitioner agreed to the government's Offer of Proof, which stated as follows:

> On May 1st, 2009 at approximately 2:33 p.m. defendant entered a Farmers and Merchant's Bank located at 3140 East Anaheim Street, in Long Beach, California. Defendant handed a teller MAG note which read "I will shoot you in the head. Give me your money, top and bottom drawer," or words to that effect.
>
> By providing the note to the teller, defendant intended to and did intimidate the teller into giving defendant Farmers' and Merchant's money.
>
> The teller gave defendant $1,496 of Farmers' and Merchant's money. Defendant took the money and left the bank.

(Government's Opposition to Motion Ex. 3 at 14.) Petitioner was subsequently committed on March 3, 2011 to the custody Bureau of Prisons for a term of 84 months, with 3 years of supervised release. (See CR Dkt. No. 163.)

**B.   Evidence Proffered by the Government**

Prior to trial, the Long Beach Police Department detective assigned to the case, Detective Donald Collier, submitted a sworn declaration describing the following alleged facts to which he was prepared to testify at trial and other evidence developed by the police. (Gov. Ex. 1 [Declaration of Donald Collier].)

Prior to Defendant's arrest on May 1, 2009, Detective Collier was aware of and was investigating three other bank robberies and one attempted robbery between April 10, 2009 and April 24, 2009 which he suspected were committed by the same person. (Id. at 1-2.)

2

1  The perpetrator in each robbery was consistently described by bank

2  employees as a black male, thirty five to forty years old, five

3  feet eleven inches to six feet tall, weighing approximately two

4  hundred and eighty five pounds, with long black curly hair. (<u>Id.</u> at

5  2 and Ex. 2 at 1.) Surveillance images of the three robberies and

6  attempted robberies showed the perpetrator wearing distinctive

7  clothing, including a "Kangol" type hat, sunglasses, and a white

8  tee-shirt. (<u>Id.</u>)

9      In response to these robberies, the Federal Bureau of

10 Investigations (FBI) circulated a Criminal Information Bulletin

11 ("Bulletin"). (<u>Id.</u>; Gov. Ex. 2.) The Bulletin presented

12 surveillance images of the robberies, listed the location and times

13 of the robberies, and noted that the perpetrator had a modus

14 operandi of entering banks on late Friday afternoons and passing a

15 demand note to the teller indicating he has a weapon but does not

16 want to shoot. (Collier Decl. at 2; Gov. Ex. 2.)

17     On May 1, 2009, Detective Collier was informed by police

18 dispatch that a robbery had been committed at approximately 2:30 pm

19 at Farmers & Merchants ("F&M1") Bank located at 3140 E. Anaheim

20 Street in Long Beach, California. (<u>Id.</u> at 3.) Detective Collier

21 promptly went to the F&M1 location to investigate. A teller

22 reported that he had noticed that a person matching the Bulletin

23 had entered the bank. (<u>Id.</u> at 4.) The perpetrator then handed the

24 teller a note saying he was going to shoot the teller in the head

25 unless the teller complied with his demand to hand over money.

26 (<u>Id.</u>) In response, the teller was able to give the perpetrator ten

27 "bait" money bills with serial numbers specifically marked and used

28 by banks in robberies, among approximately $1,566 in total. (<u>Id.</u>) .

1   (Id.) Detective Collier confirmed that the victim teller's
2   description of the robber matched the description of the bank
3   robber in the other robberies under investigation. (Id.) He also
4   observed still images of the person who had robbed the bank, which
5   showed that the perpetrator was wearing a white tee shirt, dark
6   jeans, and dark "Kangol" type hat. (Id.) This attire matched that
7   worn by the perpetrator in the previous robberies. (Id.)

8        Approximately 20 minutes later, at about 3:30 pm, Detective
9   Collier was informed by police dispatch that a person matching the
10  description in the Bulletin was inside a second Farmers & Merchants
11  Bank ("F&M2"), located at 4545 California Avenue in Long Beach,
12  waiting in line. (Id. at 5.) Shortly thereafter, dispatch reported
13  that the perpetrator had left the bank and was walking down an
14  alley. (Id.) When Detective Collier arrived at F&M2, a suspect had
15  been arrested. (Id. at 6.)

16       The arresting officer, Long Beach Police Department officer
17  Claudia Lopez, informed Detective Collier that, after F&M2 bank
18  employees recognized the person from the Bulletin, the person
19  started fumbling with a plastic checkbook, put a piece of paper in
20  his mouth, acted like he forgot something, and then left the
21  branch. (Id. at 5.) Bank employees also told Officer Lopez that the
22  person had headed towards the alley behind the bank. (Id.) As
23  Officer Lopez started driving down the alley, she observed a black
24  male, wearing a black tee shirt and blue jeans. (Id.; Mot. Ex. A
25  [Police Report by Officer Claudia A. Lopez] at 1.) She noticed that
26  the suspect was holding a white tee shirt, purple hat, and
27  sunglasses. (Id.) Officer Lopez recognized the suspect from the
28  Bulletin. (Collier Decl. at 5; Lopez Report at 1.) Based on these

1   observations, she arrested the suspect, who is Petitioner in this

2   case. (Id.; Collier Decl. at 5; Lopez Report at 1.)

3       Upon looking at the suspect, Detective Collier recognized the

4   man as the bank robber that he and others had been investigating in

5   the prior three bank robberies and one attempted robbery and the

6   person who robbed the F&M1 bank earlier on the same day. (Id. at

7   6.) This recognition was based on his study of the surveillance

8   images of the prior bank robberies and attempted robbery and the

9   description of the perpetrator given by victim tellers. (Id.)

10  Detective Collier was also shown the white tee shirt, dark hat, and

11  sunglasses defendant was carrying at the time of his arrest, which

12  appeared consistent with the items worn by the bank robber in the

13  previous robberies, including the robbery of F&M1 earlier that day,

14  as reflected in still images of that robbery. (Id.) Detective

15  Collier was also shown a blue plastic checkbook and bank robbery

16  note found inside the checkbook confiscated from the suspect, which

17  stated "I will shoot you and customers. This is a robbery. Open

18  your second drawer first and hand me the money then open up your

19  first drawer and hand me the money." (Id. at 6-7; Lopez Report at

20  1.)

21      Detective Collier was also shown a set of keys recovered from

22  Petitioner at the time of his arrest, which included a keyless

23  remote entry access device. (Id.) He instructed an officer to check

24  the immediate area and try to locate the car associated with the

25  key. (Id.) Detective Collier sought to locate and search the

26  vehicle because he believed it contained evidence of the robbery

27  that day (such as money stolen from F&M1, as no money was found on

28  Defendant's person) and because he was concerned that there could

1   be a loaded gun in the vehicle, posing a safety hazard. (Id. at 8.)
2   An officer located a vehicle which made a sound in response to the
3   officer pressing the keyless entry device. (Id. at 9-10.) Prior to
4   searching the vehicle, officers were able to establish, by running
5   the car's license plate through the Department of Motor Vehicles
6   ("DMV") database, that the vehicle was registered to Petitioner,
7   Vincent Anthony Jones, residing at 1135 M.L. King, Jr. Ave, #16, in
8   Long Beach, California. (Id. at 10.) The name and address were
9   identical to the name and address that appeared on Petitioner's
10  California Driver's License. (Id.)

11      Detective Collier ordered the vehicle impounded. (Id.) Prior
12  to having the car towed to a storage facility, Detective Collier
13  and FBI SA Gravis conducted an inventory of the contents of the
14  vehicle. (Id. at 11.) A large bundle of U.S. currency was found
15  inside the glove compartment of the vehicle. (Id.) Detective
16  Collier and SA Gravis compared the money found in the vehicle to
17  the serial numbers of the ten "bait" bills that were included in
18  money stolen from F&M1. (Id.) They found that the money from the
19  glove compartment included the "bait" bills. (Id.) This money taken
20  from the vehicle, which totaled $1,496, was logged as evidence.
21  (Id.)

22  **C.   Pre and Post-Trial Motions**

23      Prior to trial, Petitioner's Deputy Federal Public Defenders
24  Callie G. Steele and Koren L. Bell ("trial counsel") filed six
25  motions on his behalf. These included motions to suppress (1)
26  evidence seized from Petitioner's apartment (CR Dkt. No. 44); (2)
27  evidence seized from Petitioner's vehicle (CR Dkt. No. 45); (3)
28  evidence seized from the apartment of Petitioner's family member

(CR Dkt. No. 46); (4) a witness identifications based on a photographic spread and show-up procedure (CR Dkt. No. 48); and (5) evidence seized from Petitioner's vehicle pursuant to a warrant, or in the alternative, for a Franks hearing (CR Dkt. No. 74). Petitioner's counsel also filed on his behalf a motion to dismiss the case for outrageous government conduct. (CR Dkt. No. 126.) This court granted the first and third pre-trial motions to suppress. (Dkt. Nos. 136, 108.) The court denied all other motions. (CR Dkt. Nos. 98, 107, 109, 135.)

Petitioner's guilty plea was made without a plea agreement. However, as part of Petitioner's plea, the parties and court consented to Petitioner's reservation of his right to appeal this court's denial of his motions to suppress evidence seized from his vehicle and evidence seized pursuant to a warrant. (See CR Dkt. Nos. 45, 74, 145; Opp. at 9.) Subsequently, Petitioner's appellate counsel, Joseph F. Walsh ("appellate counsel"), appealed both of these preserved issues. (See Gov. Ex. 4 at 5.) On June 1, 2012, in an unpublished decision, the Ninth Circuit affirmed this court's rulings. See U.S. v. Jones, 473 Fed.Appx. 761 (9th Cir. 2012).

On December 3, 2013, Petitioner filed the instant Section 2255 motion. (CV Dkt. No. 1.) On June 6, 2014, Petitioner filed a motion to amend his Section 2255 motion. (CV Dkt. No. 8.) As discussed below, Petitioner contends that his conviction should be set aside due to ineffective assistance by his trial and appellate counsel.

///

///

///

7

**II.   Legal Standard**

**A.   Section 2255**

Section 2255 allows federal prisoners to file motions to vacate, set aside, or correct a sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. The petitioner in a Section 2255 motion bears the burden of establishing any claim asserted in the motion. To warrant relief because of constitutional error, the petitioner must show that the error was one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. See Hill v. United States, 368 U.S. 424, 428 (1962).

**B.   Ineffective Assistance of Counsel**

Under the Sixth Amendment, all criminal defendants enjoy the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686-700 (1984). In Strickland, the Supreme Court held that in order to show ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance was deficient and fell below an objective standard of reasonableness and (2) the defendant was prejudiced as a result and deprived of a fair trial. Id. at 687. This two-part standard applies to ineffective-assistance claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57 (1985); Nunes v. Mueller, 350 F.3d 1045, 1052 (9th Cir. 2003). In order to establish the first prong, "[i]f a prisoner pleads guilty on the advice of counsel, he

must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" <u>Tollett v. Henderson</u>, 411 U.S. 258, 266 (1973) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970)). In order to establish the second prong in a plea agreement context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.

When a petitioner's Section 2255 motion alleges ineffective assistance of counsel, an evidentiary hearing is necessary only if, assuming the petitioner's factual allegations are true, the ineffective assistance of counsel claim could prevail. <u>See U.S. v. Blaylock</u>, 20 F.3d 1458, 1465 (9th Cir. 1994).

**III. Discussion**

Petitioner claims that his trial and appellate counsel were ineffective for multiple reasons. Petitioner's claim is based upon (i) trial and appellate counsel's alleged failure to argue that there was an illegal search of his person in violation of the Fourth Amendment; (ii) trial counsel's alleged failure to challenge the constitutionality of the "field show-up" and witness identification; (iii) trial counsel's alleged failure to challenge the constitutionality of evidence seized from Petitioner's vehicle; (iv) appellate counsel's alleged failure to challenge the constitutionality of the evidence seized from Petitioner's vehicle; (v) trial and appellate counsel's alleged failure to raise the constitutionality of statements and evidence seized at the time of arrest; (vi) alleged failure by trial counsel to subpoena

1  restaurant surveillance footage and request exculpatory evidence
2  from the government; (vii) alleged failure by trial counsel to
3  challenge the constitutionality of Petitioner's medical record.
4  Additionally, in his motion to amend, Petitioner contends that his
5  trial counsel failed to pursue DNA testing to prove his innocence.
6        At the change of plea hearing, the court and the government
7  reviewed with Petitioner various consequences of entering a guilty
8  plea and asked Petitioner whether he understood. (Gov. Ex. 3
9  [Transcript of May 6, 2010 Change Of Plea Hearing] at 6-13.)
10  Petitioner repeatedly affirmed that he understood. (Id.) Petitioner
11  stated that he agreed with the government's offer of proof, as
12  quoted above. (Id. at 14.) In addition, Petitioner told the court
13  that prior to entering his plea he had enough time to consider his
14  decision and that he discussed his options and his case fully with
15  his attorney. (Id. at 17.) He stated that he was satisfied with the
16  representation that his attorney provided to him. (Id. at 17.)
17  Statements made in open court at the time of a plea carry a "strong
18  presumption" of truth and are entitled to "great weight."
19  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); Chizen v. Hunter,
20  809 F.2d 560, 562 (9th Cir. 1986). Because Petitioner made these
21  assertions in open court, Petitioner must make a strong showing to
22  prove his claims.
23        The court considers each asserted ground for relief in turn.
24  **A.    Search of Person**
25        Petitioner asserts that his trial and appellate counsel were
26  ineffective because they failed to challenge the constitutionality
27  of the search of his person. (Mot. at 11.) He asserts that the
28  search violated his Fourth Amendment rights because the arresting

1   officers exceeded the scope of a "Terry pat-down" when searching

2   inside Petitioner's pockets. See Terry v. Ohio, 392 U.S. 1 (1968).

3   The items seized from Petitioner's pockets included a checkbook and

4   a bank robbery note inside the checkbook. (Mot. at 16 & Ex. M.)

5   Petitioner asserts that it was this impermissible Terry pat-down

6   that lead to the probable cause supporting his arrest. (Mot. at

7   19.)

8       The record does not support Petitioner's contentions.

9   Defendant cannot establish that his counsel was ineffective in

10  failing to challenge the search because it appears such a

11  contention would be meritless. (See Boag v. Raines, 796 F.2d 1341,

12  1344, 1344 ("Failure to raise a meritless argument does not

13  constitute ineffective assistance.") Evidence provided by both

14  Petitioner and the government supports the conclusion that when the

15  police officers searched Petitioner's pockets, they already had

16  probable cause and were thus conducting a search incident to a

17  lawful arrest, not a Terry pat-down.

18      "There is probable cause for a warrantless arrest and a search

19  incident to that arrest if, under the totality of the facts and

20  circumstances known to the arresting officer, a prudent person

21  would have concluded that there was a fair probability that the

22  suspect had committed a crime." United States v. Gonzales, 749 F.2d

23  1329, 1337 (9th Cir. 1984).

24      Here, here the arresting officer, Claudia Lopez, described the

25  arrest in her report as follows:

26          We drove down the north/south alley and as we approached the
            south end of the t-alley [sic] we observed a male black
27          walking eastbound directly at the rear of 901 San Antonio. We
            immediately recognized the subject as the wanted suspect on
28          our Departmental issued Criminal Information Bulletin. . . .

1      Det. Rosales handcuffed the suspect and the suspect was taken
2      into custody. I conducted a pat-down search of the suspect and
       found a checkbook plastic cover with a balance book and a bank
3      robbery note...

4 (Mot. Ex. A.) As discussed above, the Bulletin referred to in the

5 statement presented four pictures of an individual during four

6 separate bank robberies or attempted robberies. (See Collier Decl.

7 at 5-6; Gov. Ex. 2.) Petitioner points to no evidence putting the

8 arresting officer's account of recognizing Petitioner from the

9 Bulletin in dispute.

10     The officers' immediate recognition of Petitioner is

11 sufficient to constitute probable cause. See, e.g., Gravenmier v.

12 United States, 380 F.2d 30, 31 (9th Cir. 1967) ("When the

13 investigating officer arrived in response to the manager's call, he

14 thought that appellant was a 'dead ringer' for the police composite

15 picture of the March robber. On the basis of the above information

16 the arresting officer had probable cause to arrest appellant as he

17 walked quickly away from the association.")

18     Because the officers had probable cause to arrest Petitioner,

19 the search of Petitioner's person did not violate the Fourth

20 Amendment. See Chimel v. California, 395 U.S. 752, 762-63

21 (1969)("When an arrest is made, it is reasonable for the arresting

22 officer to search the person arrested in order to remove any

23 weapons that the latter might seek to use in order to resist arrest

24 or effect his escape.") The failure of counsel to contend that the

25 officers lacked probable cause in conducting the search of

26 Petitioner's person thus cannot constitute ineffective assistance.

27 ///

28 ///

12

**B.   Field Show-up Procedure**

Petitioner asserts that his trial counsel provided ineffective assistance by failing to challenge the constitutionality of the witness identification conducted through the "field show-up." (Mot. 22-23.) This argument fails because the trial counsel did, in fact, move to exclude the witness identifications based on the field show-up. (CR Dkt. 48; Opp at 14.)

**C.   Evidence Seized from Vehicle (Trial Counsel)**

Petitioner contends that his trial counsel provided ineffective assistance by failing to challenge the constitutionality of the evidence seized from Petitioner's vehicle. (Mot. at 33.) This argument likewise fails because Petitioner's trial counsel did move to exclude the evidence at issue. Indeed, his trial counsel brought three separate pre-trial motions on the subject: a Motion to Suppress Evidence Found in Vehicle on May 1, 2009 (CR Dkt. 45); a Motion to Suppress Evidence Seized in Vehicle Pursuant to a Warrant or, in the Alternative, For a <u>Franks</u> Hearing (CR Dkt. 74); and a Motion to Reconsider Suppression of Evidence Seized Pursuant to Warrant or, in the alternative, for a <u>Franks Hearing</u>. (DR Dkt. 125).

**D.   Evidence Seized from Vehicle (Appellate Counsel)**

Petitioner contends that his appellate counsel provided ineffective assistance by failing to challenge the constitutionality of the evidence seized from his vehicle. (Mot. at 40.) This contention, too, lacks merit, as his appellate counsel did raise the issue on behalf of Petitioner in his appeal before

1  the Ninth Circuit.[1]  (Gov. Ex. 4 at 5; U.S. v. Jones, 473 Fed.Appx.

2  761 (9th Cir. 2012).

3  **E.    Statements and Evidence Seized at Time of Arrest**

4      Petitioner contends that both his trial and appellate counsel

5  provided ineffective assistance by failing to challenge the

6  constitutionality of statements and evidence seized at the time of

7  his arrest. (Mot. at 48-49.) In particular, Petitioner asserts that

8  his counsel unreasonably failed to challenge the admission of

9  statements made prior to his being Mirandized. (Id.) The motion

10  does not specify the statements Petitioner believes his counsel

11  should have moved to excluded. The only statements in the record

12  allegedly made by Petitioner before he was Mirandized were: "What's

13  going on? I was having some Chinese food at the restaurant." (Mot.

14  Ex. A.) Petitioner allegedly made these statements while he was

15  being placed in the back seat of the patrol car after being

16  arrested. (Id.) His counsels' failure to move to exclude the

17  statements cannot constitute ineffective assistance, as there would

18  be no reason for Defendant's counsel to seek to exclude the

19  statements because they were exculpatory, not inculpatory. In fact,

20  the *government* sought to exclude the statements as self serving

21  exculpatory evidence and inadmissable hearsay. (See Motion in

22  Limine re Admissibility of Evidence. (CR Dkt. No. 17.) Petitioner

23

24          [1] Appellate counsel raised two issues on appeal: (1) "Whether

25  the court erred in denying appellant's motion to suppress the money
    seized from his car on May 1, 2009, where the motion was made on

26  the grounds that the police lacked probable cause to conduct a
    warrantless search?" and (2) "Whether the court erred in denying

27  appellant's motion to suppress the cell phone and handwritten
    papers seized from his car on May 15, 2009, where the police made

28  material omissions and false representations in the search warrant
    affidavit?" (Gov. Ex. 4 at 5.)

1  opposed the motion and the court allowed the statements as

2  admissible to show Petitioner's state of mind at the time of his

3  arrest. (Dkt. Nos. 76 at 1-3; 98.)

4  **F.    Restaurant Surveillance Tape and Evidentiary Hearing**

5      Petitioner contends that his trial counsel provided

6  ineffective assistance by (1) failing to subpoena video

7  surveillance at a Chinese food restaurant where, as noted above,

8  Petitioner claimed he was eating prior to his arrest and (2)

9  failing to file a motion requesting exculpatory evidence from the

10  government for the surveillance tape. (Mot. at 58, 61.) The

11  arguments are unsuccessful.

12      Both the government and Petitioner's counsel investigated the

13  alleged alibi. According to the arrest report, on the day of the

14  arrest an officer visited the restaurant and reviewed the

15  surveillance video, concluding that "the suspect was not observed

16  in the restaurant surveillance video." (Mot. Ex. A.) The government

17  produced this report to Petitioner. Subsequently, an investigator

18  for Petitioner's counsel visited the restaurant and spoke with the

19  manager, who confirmed that the police had told him that the man in

20  the film was not the man they were looking for. (Id. Ex. C.)

21  Specifically, the manager stated that the man in the film had no

22  hair and the police told him that the man they were looking for had

23  long hair (like Petitioner). (Id.) The manager stated that he did

24  not believe the pictures would still be on the camera's memory

25  chip. (Id.) In February 2010, according to a report produced to

26  Petitioner, an FBI investigator interviewed the manager, who

27  reported that "he did not recall seeing a black male on the video

28  recording" and did not "specifically remember a black male coming

15

into the restaurant on the same day that the LBPD officers had come in." (Mot. Ex. D.) He stated that he no longer had the video recording. (Id.)

As to the first prong of the ineffective assistance of counsel inquiry, the court is not persuaded that counsel's performance in failing to subpoena the video "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 466 U.S. 688, rendering counsel's advise to Petitioner with respect to his plea ineffective. It appears from the record before the court that a subpoena of the video may have been futile as the recording no longer existed. Petitioner's trial counsel may also have found the police's representations regarding the video credible and thus reasonably made a strategic decision to focus resources on other aspects of the case.

Even assuming that his counsel erred in not subpoenaing the video, the court is not persuaded that there is a reasonable probability that, but for counsel's alleged error, Petitioner would not have pleaded guilty and would have insisted on concluding his trial. See Hill, 474 U.S. at 59. The admissible evidence proffered against Petitioner in this case with respect to the robbery of the F&M1 bank was overwhelming. As described above, this evidence included bank surveillance images, a bank robbery note allegedly found on Petitioner's person, and marked "bait" bills from the robbery allegedly found in the glove compartment of Petitioner's vehicle. (See Collier Decl. at 3, 11; Lopez Report at 1; Mot. Ex. A.) In view of this evidence, there is not a reasonable probability that, had the video been subpoenaed, it would have shown Petitioner

1   was at the restaurant at the time the F&M1 was robbed, and that, as

2   a result, Petitioner would have entered a different plea.

3        With respect to Petitioner's assertion that his counsel erred

4   by failing to file a motion asserting a <u>Brady</u> violation with

5   respect to the surveillance tape, this contention likewise fails.

6   The government's obligation is to preserve and produce any

7   potentially exculpatory evidence it has in its possession. <u>See</u>

8   <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963); <u>Strickler v. Greene</u>, 527

9   U.S. 263, 280 (1999). Here, however, there is no reason to conclude

10  that the video was potentially exculpatory. The government timely

11  provided to Defendant the evidence it had in its possession related

12  to the Chinese restaurant, including a report stating that its

13  review of the video reflected that the video was not exculpatory.

14  Plaintiff has pointed to no reason to conclude that the video

15  contained anything other than what the government described.

16  **G.   Medical Records**

17       Petitioner asserts that his trial counsel provided ineffective

18  assistance by granting prosecutors permission to review his medical

19  records without his consent and then allowing prosecutors to use

20  such records against Defendant in their prosecution of him. (Mot.

21  at 65.) This claim fails. Contrary to Petitioner's understanding,

22  there exists no physician-patient evidentiary privilege in criminal

23  proceedings under federal law under which Petitioner's counsel

24  could have sought to exclude records obtained from his

25  physician(s). <u>See</u> <u>Galarza v. United States</u>, 179 F.R.D. 291, 294

26  (S.D. Cal. 1998) ("Under federal common law there is no physician-

27  patient privilege."; <u>In re Grand Jury Proceedings</u>, 801 F.2d 1164,

28  1169 (9th Cir. 1986).

17

Even were the records at issue subject to an evidentiary privilege, Petitioner has not identified any manner in which his medical records were relied upon by the government in the case it planned and partly put on against him prior to his guilty plea. The court's review of the record does not reflect any use or reference to medical records by the government. As a result, Petitioner has not shown that there is a reasonable probability that, but for his counsel's alleged error in failing to move to exclude his medical records, Petitioner would not have pleaded guilty. See Hill, 474 U.S. at 59. Petitioner therefore has no ineffective assistance claim in relation to medical records.

**F.    Motion to Amend re DNA Testing**

On June 6, 2014, Petitioner filed a motion to amend his original Section 2255 motion pursuant to Rule 15(c), which the government opposes. (Dkt. Nos. 8, 9.) The motion seeks to add a claim that Petitioner's trial counsel provided ineffective assistance by failing to subpoena the results of a DNA test he believes was performed by the government or to otherwise pursue the use of DNA testing to support his case. (First Motion to Amend at 3, 6.) Petitioner asserts that he voluntarily gave the government his DNA for testing at the time of his arrest, and then subsequently requested, on various occasions leading up to and during trial, that his counsel subpoena the results of any testing performed by the government, but that his counsel failed to do so. (Id. at 3-4.) He asserts that a comparison between his DNA and that found on the suspected robbers' disguise (which was allegedly found on his person at the time of his arrest) would show his innocence. (See id. at 6; Collier Decl. at 4-5.) Petitioner also asserts that

1 his trial counsel never filed a motion asserting that Det. Collier
2 and Officer Lopez committed perjury when they testified under oath
3 that no DNA tests were ever conducted or existed. (Mot. Am. 1 at
4 4.)

5      As an initial matter, Petitioner's motion to amend is time-
6 barred. As an original motion, Petitioner's amendment would be
7 time-barred because it was not filed within one year from the date
8 on which his conviction became final, December 10, 2012, the date
9 that the Supreme Court denied his petition for writ of certiorari.
10 See 28 U.S.C. 2255; Griffith v. Kentucky, 479 U.S. 314, 107 (1987);
11 Opposition Ex. A. Although Petitioner's initial motion, filed
12 December 3, 2013, was timely, the motion to amend, filed June 6,
13 2014, was filed outside of the one-year period. (Dkt Nos. 1, 8.)

14      Under Rule 15(c)(2), an amendment to a pleading may relate
15 back to the date of the original filing and therefore be deemed
16 timely "where the claim or defense asserted in the amended pleading
17 arose out of the conduct, transaction, or occurrence set forth or
18 attempted to be set forth in the original pleading." Fed. R. Civ.
19 P. 15(c)(2). The Supreme Court has held that Rule 15(c)(2) applies
20 to post-conviction motions, including Section 2255 motions. See
21 Mayle v. Felix, 545 U.S. 644, 657-58 (2005). To relate back to the
22 original Section 2255, however, an amended Section 2255 claim must
23 concern one of the "separate categories of facts supporting the
24 grounds for relief" asserted in the original motion, each of which
25 "delineate an 'occurrence.'" Id. at 661. On this basis, the court
26 held in Felix that an amended petition challenging the defendant's
27 statements at a pretrial interrogation did not relate back to the
28

1 | original petition which addressed the admission of videotaped
2 | testimony of a witness. Id. at 657-661.

3 | Here, Petitioner's proposed amended Section 2255 petition does
4 | not relate to the original petition because, while the original
5 | petition discussed numerous other issues as reviewed above, it did
6 | not did not raise or discuss DNA testing. The amended petition
7 | therefore does not relate to the same "conduct, transaction, or
8 | occurrence" under Rule 15(c)(2) and is thus time-barred.

9 | Even were the amended petition not time-barred, the court
10 | would deny the petition on the merits. Petitioner's argument that
11 | DNA tests would have established his innocence is, under the facts
12 | of this case, too speculative to support an ineffective assistance
13 | claim. There is, as an initial matter, no basis other than
14 | speculation to conclude that any DNA test was ever performed in
15 | this case. Moreover, in the face of the powerful evidence proffered
16 | against him, as discussed above, Petitioner has not shown that
17 | there is any reasonable probability that, were a DNA test performed
18 | comparing his DNA with DNA found on the robber's disguise (which,
19 | as noted, was allegedly found on his person at the time of his
20 | arrest) would have (1) found a mismatch and (2) been sufficient to
21 | cause his counsel to recommend against accepting a guilty plea. See
22 | Jackson v. Calderon, 211 F.3d 1148, 1155 (9th Cir.2000) (no
23 | Strickland prejudice when no showing that proper investigation
24 | would have uncovered favorable evidence); Paul v. Gibson, 2014 WL
25 | 2547594 (C.D. Cal. Apr. 22, 2014) report and recommendation
26 | adopted, , 2014 WL 2547596 (C.D. Cal. June 5, 2014) ("Mere
27 | speculation about the existence of favorable DNA evidence is
28 | insufficient to show ineffective assistance.")

**G. Motion to Amend to Add Claim that Counsel Failed to Present Proper Case Law**

On July 11, 2014, Petitioner filed a second motion to amend his original habeas petition. (Dkt. No. 10.) The gravamen of the motion is that Petitioner's trial and appellate counsel provided ineffective assistance by failing to challenge the court's alleged misapprehension of the holding of a case, California v. Carney, 471 U.S. 386 (1985), that was discussed at a suppression hearing concerning evidence seized from Petitioner's vehicle on March 23, 2011. Unlike the previous motion to amend, this motion relates back to Petitioner's original Section 2255 motion, which raised an ineffective assistance claim concerning suppression of the same evidence. However, the claim is plainly meritless.

In Carney, the Supreme Court explained the longstanding rule that no warrant is necessary in certain circumstances for the search of an automobile where probable cause exists and found that exception to the warrant requirement applicable in the case of a mobile home. 471 U.S. at 395. Petitioner contends that the court misconstrued Carney as standing for the proposition that no probable cause is necessary when conducting a search of a vehicle. (See Second Motion to Amend at 6-9.) He contends that his trial counsel provided ineffective assistance by failing to challenge this incorrect interpretation of Carney during the suppression hearing. (See id. at 2.)

Petitioner mischaraterizes the record. The transcript of the March 23, 2011 suppression hearing demonstrates that the court and counsel for both Petitioner and the government understood that Carney did not obviate the need for a showing of probable cause.

21

(<u>See</u> CR. Dkt. No. 168 at 26-31.) Indeed, the brief mention of <u>Carney</u> was made in the context of a discussion concerning the existence of probable cause to search Petitioner's vehicle, which was followed by the testimony of Det. Collier concerning the basis for the government's contention that the vehicle's search was supported by probable cause. (<u>Id.</u> at 26-55.) Following Det. Collier's testimony, the court issued a ruling denying the motion to suppress on the grounds that the search of the vehicle was justified by probable cause in the circumstances. (<u>Id.</u> at 67:19-68:5.) There is no evidence that the court or the parties misunderstood or misapplied <u>Carney</u>. Even if <u>Carney</u> were misstated by any party or the court to suggest no showing of probable cause was necessary to search the vehicle, Petitioner suffered no prejudice because the court declined to suppress the evidence seized during the search on the basis of its finding that the search was supported by probable cause.

Petitioner additionally argues that his appellate counsel "'failed'" to file and argue the 'proper argument'" to suppress the evidence seized from his vehicle. (Second Motion to Amend at 20.) Although nominally framed as an ineffective assistance claim, Petitioner essentially makes a merits argument that the search violated the Fourth Amendment because the officers did not have probable cause to search his vehicle. Fourth Amendment claims are not cognizable under federal habeas review, unless no prior opportunity was provided to litigate those claims. <u>Stone v. Powell</u>, 428 U.S. 465, 481-82 (1976). As discussed above, Petitioner's trial counsel filed a suppression motion and Petitioner's appellate counsel filed an appeal on this issue, which the trial court and

the Ninth Circuit, respectively, denied. In any case, having
reviewed the appeal, the court does not find any notable deficiency
in the quality of Petitioner's appellate counsel's advocacy and
certainly none that would support an ineffective assistance claim.
See, e.g. Jones v. Barnes, 463 U.S. 745, 754 (1983) ("For judges to
second-guess reasonable professional judgments and impose on
appointed counsel a duty to raise every 'colorable' claim suggested
by a client would disserve the very goal of vigorous and effective
advocacy underlying [Anders v. California, 386 U.S. 738 (1967)].
Nothing in the Constitution or our interpretation of that document
requires such a standard.") (quotations in original).

Accordingly, the second motion to amend will be granted but
the additional claims asserted in the motion, which is incorporated
into the original habeas petition, lack merit and will be denied.

## IV.  Conclusion

For the reasons stated above, Petitioner's first Motion to
Amend Original and Timely Filed 28 U.S.C. § 2255 Motion Pursuant to
Relief Under Rule 15(c) (Dkt. No. 189) is DENIED; Petitioner's
second Motion to Amend Original and Timely Filed 28 U.S.C. § 2255
Motion Pursuant to Relief Under Rule 15(c) (Dkt. Nos. 196 AND 197)
are VACATED as they were addressed in the civil order; and
Petitioner's Motion to Vacate, Set Aside, or Correct Sentence
Pursuant to 28 U.S.C. § 2255, which incorporates the claims made in
Petitioner's second motion to amend, is DENIED.

The motion for return of property (Dkt. No. 192) is DENIED,
without prejudice. Defendant may file a renewed motion for return
of property within ninety days of the date his Section 2255 motion

is denied or, in the case that he appeals this court's decision on
his Section 2255 motion, within 90 days of the resolution of that
appeal.  The United States shall retain any unreturned property
until further order of the Court.  The motion for status of return
of property (Dkt. No. 199) is VACATED.

IT IS SO ORDERED.

Dated: August 26, 2014

DEAN D. PREGERSON
United States District Judge